UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

THERESA ANN LONG,

        Plaintiff,

        Case No. 6:14-cv-00036 -ST

    v.

        OPINION AND ORDER

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Theresa Ann Long ("Long"), seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-33, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #5). For the reasons set forth below, that decision is REVERSED and REMANDED for an immediate award of benefits.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Long protectively filed for DIB and SSI on September 3, 2010, alleging a disability onset date of May 2, 2010. Tr. 106, 243-53.[1] Long filed as a disabled widow.[2] Tr. 15. Her applications were denied initially and on reconsideration. Tr. 167-81, 186-95. On June 7, 2012, Administrative Law Judge ("ALJ") James Yellowtail conducted a hearing by videoconference. Tr. 64-105. The ALJ issued a decision on June 29, 2012, finding Long not disabled. Tr. 15-24. The Appeals Council denied a request for review on November 22, 2013. Tr. 1-4. The ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 416.1481, 422.210.

## BACKGROUND

Born in 1955, Long was 57 years old at the time of the hearing before the ALJ. Tr. 73-74. She has a high school diploma and completed a year and a half of community college. Tr. 74. Her past relevant work experience includes work as customer service representative, telephone call center worker (Tr. 76, 94) and as a receptionist with some accounting and data entry duties (Tr. 94-95). Long alleges that after breaking her left wrist in a fall, she stopped working on May 2, 2010, due to the combined impairments of a fractured left wrist with malunion after healing, osteoporosis, and degenerative arthritis presenting as left shoulder adhesive capsulitis and associated pain. Tr. 18, 265.

///

///

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed July 8, 2014 (docket #14).
[2] Long's applications indicate that she was married twice and that one of her former husbands is now deceased. Tr. 244, 250-51.

2 – OPINION AND ORDER

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § § 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing of Impairments"). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her

impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e).

If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g); *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099.

The Social Security regulations include Medical-Vocational guidelines, designed to improve the uniformity and efficiency of step five disability decisions by relieving the Commissioner of the "need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy." *Heckler v. Campbell*, 461 US 458, 461 (1983). These "grids" "consist of a matrix of . . . factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform." *Id* at 461-62 (footnotes omitted).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g), 416.960(c).

## ALJ'S FINDINGS

Long meets the insured status requirements for DIB through March 31, 2013, and the non-disability requirements for disabled widow's benefits through a prescribed period ending June 30, 2014. Tr. 17-18.

At step one, the ALJ concluded that Long has not engaged in substantial gainful activity since the alleged onset date of May 2, 2010. Tr. 18.

At step two, the ALJ determined that Long has the severe impairments of status post-left wrist fracture, osteoporosis, and left shoulder adhesive capsulitis and pain. *Id*.

At step three, the ALJ concluded that Long does not have an impairment or combination of impairments that meets or equals any of the listed impairments. *Id*. The ALJ found that Long has the RFC to perform light work, except is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, only occasional pushing and pulling with the left upper extremity, can stand or walk for 30 minutes at a time up to a total of four hours, can sit for 30 minutes at a time for up to six hours, must change position every 30 minutes, cannot climb ladders, ropes, or scaffolds, can only occasionally stoop or kneel, and is "limited to frequent handling and [maximum lifting and carrying 10 pounds]." Tr. 19, 24.[3]

Based upon the testimony of a vocational expert ("VE"), the ALJ determined at step four that Long's RFC permitted the performance of her past relevant work as a receptionist and customer service representative. Tr. 23. As discussed in more detail below, although not explicitly stated, the ALJ's step four analysis hinged on his rejection of evidence and

---

[3] Although the last six words of the RFC description are truncated in the ALJ's decision (Tr. 18), the remainder of the record makes clear that the missing portion imposes a lifting and carrying weight restriction of 10 pounds. *Compare* Tr. 19, 24, and 99 ("hypothetical 2B").

5 – OPINION AND ORDER

medical opinions indicating that Long is restricted to only occasional bilateral use of her hands.

Accordingly, without reaching step five, the ALJ determined that Long was not disabled at any time through the date of the decision. Tr. 24.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'" *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## DISCUSSION

Long contends that the ALJ erred by failing to credit her testimony and by rejecting the opinions of an examining physician, treating physician, and examining physical therapist. The crux of this case is whether the ALJ properly rejected the evidence in the record that Long is incapable of "frequent" use of her left hand and, in particular, whether

she is able to use her left hand for "frequent" fingering activities, such as keyboarding. Although the Commissioner contends that she should be allowed to reassess Long's credibility and RFC, the record reveals no basis for doing so. Once Long's testimony and the medical opinions are properly credited, the record compels a finding that Long is incapable of performing her past relevant work and is disabled at step five under the Medical-Vocational Rules.

## I. Long's Credibility

### A. Legal Standard

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F3d at 1036. Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

Lay witness testimony concerning a claimant's symptoms or how an impairment affects ability to work is competent evidence and may not be disregarded without comment. *Tobeler v. Colvin*, 749 F3d 830, 833-34 (9th Cir 2014) (citations omitted). To reject such evidence, the ALJ must provide germane reasons. *Id*.

///

///

### B. Long's Testimony

At the hearing, Long testified that she cannot sit or stand for lengthy periods of time and, due to her wrist injury, cannot type. Tr. 78. Lifting, pushing, and pulling cause pain at her arm and shoulder, and stooping and squatting cause lower back pain due to her arthritis. *Id*. Long uses a brace on her left wrist when driving, pushing a grocery cart, and sweeping. Tr. 81-82. Long, who is right-hand dominant, has difficulty grasping very small (paperclip sized) items or larger items (such as a large coffee cup) and cannot lift a gallon of milk with her left hand. Tr. 83-84. If an item is not heavy or at an awkward angle, she can use her left hand to "stabilize" it. Tr. 88. Due to the way her left wrist "remodeled itself" after healing from the fracture, she cannot hold her hands over a keyboard correctly, and typing for more than three to five minutes causes her wrist to ache. Tr. 85-86.

The record reveals no evidence of malingering, and ample objective medical evidence of an underlying impairment that could result in the symptoms alleged by Long. Nevertheless, the ALJ found Long's statements "not fully credible" and gave two reasons to support this conclusion, neither of which withstand scrutiny. First, the ALJ cited Long's "reported activities" as "not fully consistent with someone who has alleged disabling impairments." Tr. 20. Citing the Adult Function Reports by Long (Ex. 3E, Tr. 278-85) and her niece, Kimberly Capitanich (Ex. 4E, Tr. 286-93), the ALJ listed "canning, gardening, weeding, cooking, taking care of pets and chickens, driving, shopping, and basic household tasks" as activities Long can perform. Tr. 20. The ALJ also noted that Long "enjoys camping, making craft projects, and selling crafts on a regular basis." *Id*, citing Ex. 4E/5, Tr. 290. Finally, the ALJ cited Long's hearing testimony that she was "still able to shop,

push a grocery cart, sweep and mop" as indicative that she can perform "numerous" activities of daily living which require the "use of one's hands." *Id*.

The difficulty with this reasoning is that it sidesteps the issue of "frequent" bilateral hand use. According to the VE, whether Long is capable of the "frequent" bilateral use of her hands for the types of fingering activities is critical to the transferability of any job skills from Long's past relevant work, such as data entry, accounting and bookkeeping duties, and telephone transfers. Tr. 99-102.

Long admits that she has no difficulty using her dominant right hand. Tr. 83. However, she testified consistently that she has considerable limitations resulting from her left wrist injury which are supported by the record. As to the specific activities cited by the ALJ, Long testified that she pushes a grocery cart with her left forearm and uses her left hand only to "balance the broom" when trying to sweep. Tr. 81-82. Long's niece noted that Long has "trouble with buttons," "can't style [her] hair with a curling iron," and "can't shave right arm pit." Tr. 287. She also "can't lift over 3 lbs. with left hand, can't open jars," "can't lift heavy pans, has to have help with canning" and "pull[s] weeds with one hand." Tr. 287-88; *see also* Tr. 351 (September 9, 2010, physical therapy chart note indicating Long hurt her hand and caused a "set back in strength and increase in pain" when she overexerted her left wrist by opening a jar of sauerkraut). She "can't fish one handed" and "can't pull crab nets." Tr. 282, 290. She wears a brace "at all times." Tr. 284, 292. The record does not reveal the nature of Long's "craft painting," but whatever that involves "takes longer" due to her left wrist injury (Tr. 282), and nothing in the record supports the notion that it is an activity that requires the repeated use of the left hand, particularly given that Long is right-hand dominant. Similarly, nothing in the record supports the conclusion

9 – OPINION AND ORDER

that the other activities cited by the ALJ require the bilateral use of Long's hands, much less repeated use of the left hand for "fingering" activities, such as keyboarding and data entry.

The ALJ purported to give "significant weight" to Capitanich's statements. Tr. 23. However, the ALJ's assumption that the vast majority of Long's activities require "frequent" left hand fingering similarly infected his review of Capitanich's statements. The ALJ downplayed Long's difficulties with tasks that more clearly require bilateral fingering such as buttoning buttons, styling her hair, and canning, then finds participation in activities that may or may not require bilateral hand use such as "the ability to sell craft projects, garden, and camp" as inconsistent with disabling functional impairments. Tr. 23.

The ALJ's assumption that the activities described by Long or Capitanich are probative of the ability to engage in "frequent" bilateral fingering is unwarranted. Neither Long's nor Capitanich's statements about Long's regular activities provides a basis to reject their testimony about the limitations on her left hand use. In sum, nothing supports the conclusion that Long's activities undermine her testimony or statements in the Adult Function Reports. Thus, those activities are an inadequate basis on which to discount the evidence by Long and Capitanich about Long's left-hand restrictions.

As a second reason to reject Long's testimony concerning her left hand limitations, the ALJ found it "inconsistent with . . . objective findings in the medical record." Tr. 20. This dovetails with the ALJ's rejection of the medical evidence regarding Long's left-hand restrictions. As discussed next, the ALJ failed to give adequate reasons to reject medical opinions indicating that Long is capable of using her left hand for fingering activities, such as keyboarding, only "occasionally." Those opinions should be fully credited and, as a

result, the medical record provides no inconsistencies adequate to justify the rejection of Long's testimony concerning her left-hand restrictions.

## II. Medical Opinions

### A. Legal Standard

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F3d 1155, 1164 (9th Cir 2008). The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991). In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### B. "Occasional" versus "Frequent" Bilateral Hand Use

RFC determinations have traditionally incorporated the durational categories found in the Revised Dictionary of Occupational Titles (DOT) published by the Department of Labor.[4] *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C, p. 3 (1993), *available at* Westlaw SCODICOT APP C. Those categories are defined as follows: "Not Present" is "Activity or condition does not exist;"

---

[4] The Department of Labor is moving toward replacing the DOT with an online database called "O*NET." *See Feeley v. Comm'r of Soc. Sec.*, 2015 WL 3505512, at *10 & n2 (DNJ June 3, 2015).

11 – OPINION AND ORDER

"Occasionally" is "Activity or condition exists up to 1/3 of the time;" "Frequently" is "Activity or condition exists from 1/3 to 2/3 of the time;" and "Constantly" is "Activity or condition exists 2/3 or more of the time."  *Id*.

In this case, the distinction between Long's ability to only "occasionally" or to "frequently" use her left hand is critical.  The VE testified that Long's past relevant work as a customer service representative (DOT 299.357-014) and a receptionist (DOT 237.367-038) require "by definition bilateral use of the hands at a frequent level."  Tr. 100.  Translated, this means that Long's past relevant work requires the bilateral use of her hands during an 8-hour work day for a minimum of 2 hours and 40 minutes (1/3 of the time) and up to 5 hours and 20 minutes (2/3 of the time).

The ALJ engaged in a lengthy discussion of evidence submitted by several medical sources, including:  (1) the state agency Disability Determination Services ("DDS") medical consultant, Sharon Eder, M.D.; (2) a consultative examiner, Raymond P. Nolan, M.D., Ph.D; (3) the treating physician, Reed Gurney, M.D.; and (4) an occupational therapist, Jeffrey Hallman, OTR.  Tr. 20-23.  While not explicitly stated, it is clear that the ALJ rejected the opinions of Drs. Gurney and Nolan, a treating and an examining physician respectively, to the extent they found that Long was precluded from "frequent" use of her left hand.  Instead, the ALJ found Long capable of "frequent" bilateral handling and "unlimited" fingering based on the findings in Dr. Eder's review of the record which formed the basis of the Commissioner's three reconsideration-level decisions.  Tr. 142, 151, 160.  Accordingly, the ALJ concluded that Long was capable of performing her past relevant work.

12 – OPINION AND ORDER

In contrast to Dr. Eder, who performed only a records review as part of Long's request for reconsideration, Long's treating physician, Dr. Gurney, opined on May 13, 2011, in a Physical Capacities Evaluation form that Long: (1) could not use her left hand adequately for pushing and pulling or for fine manipulation; (2) could not use her left hand for repetitive motion tasks such as writing, typing, or assembly; and that (3) Long's pain was sufficiently disabling that it would prevent her from working full time at even a sedentary position. Tr. 577-79. Four months later, on September 13, 2011, in an Attending Physician Statement form submitted to the MetLife (apparently Long's employer's disability insurance provider), Dr. Gurney noted that he had advised Long not to return to work, citing her limited ability to use her left hand and shoulder. Tr. 618.

After examining Long on January 7, 2012 (Tr. 598-606), Dr. Nolan opined that Long was limited to only occasional handling, fingering, and feeling with her left hand due to left wrist pain and "would have difficulty with prolonged periods of computer data entry." Tr. 600, 603. These observations echo the notation of Long's orthopedic surgeon, Michael Ivanitsky, M.D., on October 29, 2010, that Long was "unable to type for more than just a couple of minutes, if that even, before the wrist becomes too uncomfortable." Tr. 563. The last treatment note from Dr. Ivanitsky dated March 2, 2011, states that Long experiences worse pain with activity and sometimes will have discomfort even at rest if she has been active. Tr. 561-62.

Dr. Gurney has treated Long since at least 2006, including conducting multiple examinations since the date of her left wrist fracture. Tr. 375-559 (February 27, 2007 –

February 11, 2010),[5] 586-87 (September 13 & November 16, 2011), 590-92 (August 16, 2011), 626-28 (January 11 and April 11, 2012). Though acknowledging that opinions by treating doctors are normally entitled to "controlling weight," the ALJ accorded Dr. Gurney's opinions "little weight." Tr. 22. To reject the limitations endorsed by Dr. Gurney, the ALJ was required to provide "specific, legitimate reasons." *Lester*, 81 F3d at 830. As reasons, the ALJ cited inconsistencies between two assessment forms completed by Dr. Gurney and between the alleged limitation and Dr. Gurney's chart notes. Tr. 22. However, neither of these reasons passes muster.

As support for the first inconsistency, the ALJ pointed out that in the Attending Physician Statement dated September 13, 2011, Dr. Gurney marked boxes that both Long's right and left hands could "repetitively" perform "fine finger movements." Tr. 618. At the hearing the ALJ questioned Long about whether she had an explanation for this entry which, in his view, was inconsistent with Dr. Gurney's opinion four months earlier that Long could not "adequately" use her hands for "fine manipulation." Tr. 577. However, these two forms do no directly contradict one another concerning the use of Long's left hand.

The Attending Physician Statement notes that Long was advised not to return to work due to her "limited ability to use [her left] hand [and left] shoulder" and that she could work a total of only 2-4 hours per day due to her restrictions. Tr. 618. It does not quantify the duration of Long's ability to use her left hand for fine finger movements. However, the notation is in the same area of the form that sets her maximum work duration at 2-4 hours. *Id*. In contrast, the earlier Physical Capacities Evaluation addressed Long's ability to

---

[5] Many of the treatment notes and laboratory results in the record relate to Long's treatment for breast cancer, including a lumpectomy, lymph node dissection, and radiation therapy in 1994 (Tr. 533, 553), followed by a reoccurence in 2007 which was treated by a mastectomy and chemotherapy. Tr. 553-54.

14 – OPINION AND ORDER

adequately perform the particular task for a "full capacity" 8-hour work day.  Tr.  577.  To "frequently" perform an activity requires the ability to perform the activity for up to 5 hours and 20 minutes of an 8-hour work day.  Given that Dr. Gurney notes on this same form that Long is capable of working no more than 4 hours per day due to her limited ability to use her left hand and shoulder, there is no contradiction in stating that she is limited to only "occasional" bilateral use of her hands.

As support for the second inconsistency, the ALJ pointed to Dr. Gurney's chart note dated April 11, 2012 (Tr. 626-27) which noted "no joint pain, swelling, warmth, redness, stiffness or deformity" and did not discuss any left hand, wrist, or upper extremity limitations.  Tr. 22.  However, that appointment was a follow-up regarding Long's breast cancer treatment.  *See* Tr. 626.  Just as Dr. Gurney did not assess Long's left hand issues during that examination, so, too, he did not assess her breast cancer issues when following her back, shoulder, and hand issues.  *Compare* Tr. 587 and Tr. 626-27.

Furthermore, it is of no moment that on a particular day nearly two years after her left hand injury, Long exhibited no symptoms of joint pain, swelling, warmth, redness, stiffness, or deformity that were sufficiently serious to make their way into a physician's chart note.  The issue is whether Long can use both hands for up to 5 hours and 20 minutes per 8-hour work day performing the repetitive "fingering" activities required of her past relevant work.  Long testified to the many ways she adapts her activities to limit the use of her left hand.  It stands to reason that, by doing so, she limits the symptoms associated with increasing left hand fingering activities.  Thus, again, the lack of a notation as to particular symptomology on a particular day is an insufficient basis on which to discredit Dr. Gurney's opinions concerning Long's left hand limitations.  Instead, the only conclusion that is

15 – OPINION AND ORDER

supported by substantial evidence in the record is that Long is limited to the "occasional" bilateral use of her hands for the "fingering" activities that are part and parcel of her past relevant work.

### III.  <u>Remand for an Award of Benefits</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138 (9th Cir 2011). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id*.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id*, quoting *Benecke v. Barnhart*, 379 F3d 587, 590 (9th Cir 2004). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003). The court should decline to credit testimony when "an outstanding issue" remains. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

The ALJ found Long capable of "frequent handling" and included that limitation in her RFC.  Tr. 19.  The RFC listed on that page then trails off, prompting the Commissioner to contend that this court should remand this case to allow the ALJ to reassess Long's RFC.  However, the ALJ erred by rejecting testimony by Long and opinions by her treating physician that Long is limited to only "occasional" bilateral use of her hands.  Once Long's testimony and Dr. Gurney's opinion are properly credited and a limitation to only "occasional" bilateral use of Long's hands is included in the RFC, only one conclusion is legally supportable.

The VE testified unequivocally that Long's past relevant jobs "by definition" require the "frequent" bilateral use of the hands and that adding a limitation of only "occasional" left handed fingering would rule out Long's past relevant work.  Tr. 100.  Thus, a limitation of only "occasional" bilateral use of the hands eliminates those jobs from consideration at step four and requires a step five analysis.

Long contends that she should be found disabled under either Medical-Vocational Rule 201.06 (20 CFR § 404, Subpt. P, App. 2, Table 1) or 202.06 (20 CFR § 404, Subpt. P, App. 2, Table 2), both of which direct a finding of "disabled" at step five for individuals who:  (1) are of "advanced" age; (2) have a high school education or more, but do not have skills that provide for direct entry into skilled work; and (3) who previously performed skilled or semiskilled work but whose skills are not transferrable.[6]  Long was age 55 at the time of her injury, placing her in the category of "advanced age" for Social Security purposes.  20 CFR § 404.1563(e).  As the VE's testimony reveals, whether Long is disabled

---

[6] These two rules differ only in the applicable maximum sustained work capacity limitation, with Rule 201.06 guiding decisions when the claimant is limited to sedentary work and Rule 202.06 guiding decisions when the claimant is limited to light work.

17 – OPINION AND ORDER

under these rules turns on whether she has the capacity to "frequently" engage in bilateral use of her hands for data entry, accounting duties, bookkeeping duties, and the keyboarding necessary to perform telephone transfers. If so, then the work skills she acquired at her previous jobs would transfer and the grids would direct a finding of "not disabled." However, the VE testified that these work skills would not be considered transferrable in the event Long were precluded from "frequent" bilateral use of her hands. Tr. 101-02.

No purpose would be served by remanding this case for further proceedings. Once the improperly rejected testimony and opinion are credited: (1) at step four, Long is precluded from performing her past relevant work; and (2) at step five, irrespective of whether Long is restricted to "sedentary" or "light" work, Medical-Vocational Rules 201.06 (sedentary work) and 202.06 (light work) direct a finding that Long is disabled. Accordingly, the Commissioner's decision is remanded for an immediate award of benefits.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED AND REMANDED pursuant to sentence four of 42 USC § 405(g) for an immediate award of benefits.

DATED June 26, 2015.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge

18 – OPINION AND ORDER